Jorge BASALDUA, Appellant,

v.

The STATE of Texas, Appellee.

No. 54427.

Court of Criminal Appeals of Texas.

Nov. 2, 1977.

State's Motion for Rehearing Denied Nov. 30, 1977.

James C. Harrington, San Juan, for appellant.

Oscar McInnis, Dist. Atty. and Terry D. Key, Asst. Dist. Atty., Edinburg, for the State.

1.  Article 42.12, § 6, Vernon's Ann.C.C.P., provides in part:

    "The court having jurisdiction of the case shall determine the terms and conditions of

## OPINION

ONION, Presiding Judge.

This is a purported appeal from an order refusing to alter or modify conditions of probation.[1]

On July 7, 1975 appellant entered a guilty plea before the court after having waived trial by jury for the offense of possession of a usable quantity of marihuana of more than four ounces. His punishment was assessed at three (3) years in the Department of Corrections and a fine of $200.00. The imposition of the sentence was suspended and the appellant was placed on probation for three (3) years subject to certain probationary conditions, which included:

"h.  Pay his fine, if one be assessed, and all court costs including $100.00 attorney's fees (Court appointed attorney) whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum that the Court shall determine . . .

"$100 attorney fees payable $10 per month starting Aug. 1, 1975.

"h–1.  Submit his person, place of residence and vehicle to search and seizure at any time of the day or night, with or without a search warrant whenever requested to do so by the Probation Officer or any other law enforcement officer."

It appears that at the time of the imposition of these conditions the appellant and his court-appointed counsel objected to these particular conditions but no appeal was taken at that time.

On November 3, 1975 the appellant filed a motion to modify conditions of probation asking that the two conditions be stricken from the order granting probation. A hearing on the motion was held on January 8, 1976, and the court took the matter under advisement. On March 23, 1976 the court denied the motion, and on April 1, 1976 the appellant gave notice of appeal from the

probation and may, at any time, during the period of probation alter or modify the conditions . . . .."

order refusing to alter or modify the conditions of probation.

We are confronted initially with the procedural question of whether an appeal lies from such an order.

Article V, § 5 of the Texas Constitution provides for the jurisdiction of the Court of Criminal Appeals as follows:

"The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the state in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law. •

"The Court of Criminal Appeals . . shall have the power to issue the writ of habeas corpus, and under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction. . . ."

Under such constitutional provision, the Legislature has the power to make proper exceptions to the right of appeal in criminal cases and regulate the appellate jurisdiction of the Court of Criminal Appeals, see *Walker v. State,* 537 S.W.2d 36, 38 (Tex.Cr.App.1976); *De Silva v. State,* 98 Tex.Cr.R. 499, 267 S.W. 271 (1924), and also to provide which writs the court may issue to enforce its own jurisdiction. *Walker v. State,* supra.

Article 4.03, Vernon's Ann.C.C.P., provides:

"The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases. This Article shall not be so construed as to embrace any case which has been appealed from any inferior court to the county court, the county criminal court, or county court at law, in which the fine imposed by the county court, the county criminal court or county court at law shall not exceed one hundred dollars."

Article 4.04, Vernon's Ann.C.C.P., provides:

"Sec. 1. In addition to the power and authority now vested in the Court of Criminal Appeals of the State of Texas, said court and each member thereof shall have, and is hereby given, power and authority to grant and issue and cause the issuance of writs of mandamus and certiorari agreeable to the principles of law regarding said writs, whenever in the judgment of said court or any member thereof the same should be necessary to enforce the jurisdiction of said court."

In *Walker v. State,* supra, it is stated:

"It is clear from the above constitutional and statutory provisions that the Court of Criminal Appeals has appellate jurisdiction in all criminal cases in the State with the exception made by law in Article 4.03, supra, relating to cases originating in the Justice of the Peace and Municipal Courts and tried de novo in a County Court where the fine then assessed is $100.00 or less. *Bridges v. State,* 423 S.W.2d 931 (Tex.Cr.App.1968); *Leggio v. State,* 489 S.W.2d 622 (Tex.Cr. App.1973). See also Article 4.03, supra, note # 7, and cases there cited.

"It is also clear from the constitutional provisions that the Court of Criminal Appeals and the Judges thereof have general authority to issue the writ of habeas corpus. Further, it may, as prescribed by law, issue such writs as may be necessary to enforce its own general jurisdiction. See Article 4.04, supra. See also *State ex rel. Smith v. Blackwell,* 500 S.W.2d 97 (Tex.Cr.App.1973); *Ex parte Giles,* 502 S.W.2d 774 (Tex.Cr.App.1973). The right of the court to issue writs, other than habeas corpus, is thus limited."

Further, it is established by statute that the Court of Criminal Appeals may review bond forfeiture in criminal cases by appeal or writ of error from a final judgment forfeiting the bail bond. See Articles 44.42, 44.43, 44.44, Vernon's Ann.C.C.P.; *Walker v. State,* supra; *Glenn v. State,* 155 Tex. Cr.R. 498, 236 S.W.2d 809 (1951); *Kubish v. State,* 128 Tex.Cr.R. 666, 84 S.W.2d 480 (1935); *Hodges v. State,* 73 Tex.Cr.R. 638, 165 S.W. 607 (1913); *Jeter v. State,* 86 Tex. 555, 26 S.W. 49 (1894); *Swanson v. State,* 169 Tex.Cr.R. 390, 334 S.W.2d 179 (1960).

■ The Court of Criminal Appeals will not exceed its jurisdiction as stated in 15 Tex.Jur.2d, Courts, § 23, p. 445:

". . . When a proceeding from which an appeal is attempted comes within none of the statutory or constitutional provisions conferring jurisdiction, the court will not exercise authority . .."

We find neither constitutional nor statutory authority which would confer jurisdiction on this court to hear an appeal from an order entered pursuant to Article 42.12, § 6, supra (footnote # 1), altering or modifying probationary conditions or an order, as in the instant case, refusing to alter or modify such conditions. It must be remembered that this is not an appeal from an order granting probation, cf. Article 42.04, Vernon's Ann.C.C.P., nor is it an appeal from an order revoking probation. Article 42.12, § 8, Vernon's Ann.C.C.P. We conclude that this court lacks the authority to entertain a direct appeal from the order entered. See and cf. *Walker v. State,* supra; *Hardin v. State,* 157 Tex.Cr.R. 283, 248 S.W.2d 487 (1952); *Morgan v. State,* 135 Tex.Cr.R. 76, 117 S.W.2d 76 (1938); *Griffin v. State,* 29 S.W.2d 349, 350 (Tex.Cr.App.1930). See also *Bretz v. State,* 508 S.W.2d 97 (Tex.Cr.App.1974); *Swanson v. State,* supra.

■ Although the purported appellant has characterized the case as an appeal, he prays, by supplemental brief, that if this court decides that no appeal lies then the proceedings be considered as an application for writ of habeas corpus. He cites *Ex parte Giles,* 502 S.W.2d 774 (Tex.Cr.App. 1973), where the court was asked to issue a writ of mandamus which was beyond its jurisdiction since its jurisdiction was not endangered but where the court considered the pleadings as an application for writ of habeas corpus. If the facts raise a proper habeas corpus issue, then the proceedings should be considered as a habeas corpus

proceeding since to dismiss the appeal and require a new and separate habeas corpus application would require a useless thing. See *Rice v. State,* 548 S.W.2d 725 (Tex.Cr. App.1977); *Ramirez v. State,* 486 S.W.2d 373 (Tex.Cr.App.1972); *Taylor v. State,* 482 S.W.2d 246 (Tex.Cr.App.1972).

■ We conclude that the facts raise a proper habeas corpus issue and fall within our habeas corpus jurisdiction.[2] See *Ex parte Herrin,* 537 S.W.2d 33 (Tex.Cr.App. 1976).

"The writ of habeas corpus is intended to be applicable to all . . . cases of confinement and *restraint,* where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law." Article 11.23, Vernon's Ann.C.C.P. (Emphasis added.)

Article 11.22, Vernon's Ann.C.C.P., defines "restraint" as:

". . . the kind of control which one person exercises over another, *not* to confine him within certain limits, *but to subject him to the general authority and power of the person* claiming such right." (Emphasis added.)

We conclude that the imposition of conditions of probation that contain unconstitutional infringements of freedom of action constitutes a "restraint" within the scope of habeas corpus relief. See *Ex parte Guzman,* 551 S.W.2d 387 (Tex.Cr.App.1977) (Concurring Opinion). Therefore, we will address appellant's constitutional arguments on the merits.

■ Appellant challenges the constitutionality of the Texas recoupment scheme which grants the trial court discretion to require, as a condition of probation, that a convicted defendant repay the county for providing him with court-appointed counsel.[3] Appellant argues that the plan

---

2. It has been said that the original jurisdiction of this court to issue writs of habeas corpus is unlimited. *State v. Briggs,* 171 Tex.Cr.R. 479, 351 S.W.2d 892, 894 (1961). See also Article 11.05, Vernon's Ann.C.C.P.

3. See Articles 42.12 and 1018, Vernon's Ann.C. C.P. On August 29, 1977 the amendment to ·§ 6, Article 42.12, Vernon's Ann.C.C.P., became effective (Acts 1977, 65th Leg., ch. 388, p.

violates the due process clauses of the United States and Texas Constitutions; that it violates the equal protection clauses of the United States and Texas Constitutions by imposing harsher sanctions on appellant for not paying for his appointed counsel than are imposed on those persons who fail to pay their private attorneys; and finally, that so charging an indigent defendant interferes with the exercise of his right to counsel.

Appellant relies primarily on the authority of *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), and decisions from other jurisdictions, such as California and Michigan, which have invalidated particular recoupment schemes. He attempts to distinguish the more recent decision of the United States Supreme Court in *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), which upheld the Oregon recoupment plan. An examination of the Texas statutes and our interpretive decisions in the context of *Fuller v. Oregon,* supra, and *James v. Strange,* supra, convinces us that the Texas recoupment plan is constitutional.

*James v. Strange,* supra, concerned a Kansas recoupment statute [4] that allowed the State to recover, in subsequent civil proceedings, legal defense fees for indigent defendants. The Court invalidated the Kansas statute for its deficiencies in three areas: (1) unavailability to the defendant of exemptions provided for other judgment debtors by the Kansas Code of Civil Procedure; (2) without the exemptions, a defendant was subject to wage garnishment and

was thus deprived of continuing means to support himself and his family; and (3) the statute provided for recoupment regardless of whether the indigent defendant was acquitted or convicted. Justice Powell noted that "[i]t is thus apparent that state recoupment laws and procedures differ significantly . . . Given the wide differences in the features of these statutes, any broadside pronouncement on their general validity would be inappropriate." 407 U.S. at p. 133, 92 S.Ct. at p. 2030. We believe the Texas recoupment plan differs significantly from the Kansas statute and is similar to the Oregon statute more recently upheld in *Fuller v. Oregon,* supra.

The Court in *Fuller* held that the Oregon statute, which provided the opportunity for a convicted defendant to show that legal costs would impose manifest hardship, did not violate the equal protection clause. The legislative decision not to impose repayment obligations on defendants who are not convicted or whose convictions are reversed was held to be an objectively rational one. Further, the Court held that the statute did not infringe on a defendant's right to counsel.

As the State in the case at bar points out, the constitutionality of the Oregon statute rested on several conditions. An examination of the Texas scheme reveals that it also satisfies these conditions. First, only a *convicted* defendant in Oregon may be ordered to pay court costs. Similarly, Article 42.12, §§ 3, 3a and 6, and Article 1018, Vernon's Ann.C.C.P., impose liability for payment of

---

1058). This amendment expressly provides that one of the suggested conditions of probation may be:

"(j) Reimburse the county in which the prosecution was instituted for compensation paid to appointed counsel for defending him in the case, if counsel was appointed."

Thus, the reimbursement for appointed counsel will not have to be included as court costs. This amendment has no bearing on the issue to be decided here.

**4.** Justice Powell described the operation of the statute in this fashion:

"When the State provides an indigent defendant with counsel or other legal services,

the defendant becomes obligated to the State for the amount expended in his behalf. Within 30 days of the expenditure, the defendant is notified of his debt and given 60 days to repay it. If the sum remains unpaid after the 60-day period, a judgment is docketed against defendant for the unpaid amount . . . The indigent defendant is not, however, accorded any of the exemptions provided by that code [the Kansas Code of Civil Procedure] for other judgment debtors except the homestead exemption. . . ." [Footnotes from Justice Powell's opinion are omitted.] 407 U.S. at pp. 130–131, 92 S.Ct. at p. 2029.

costs only on a *convicted* defendant. Persons who are acquitted, whose trials end in mistrial or are dismissed and those whose convictions are overturned on appeal are not liable for costs in Texas.

■ Second, under the Oregon plan a convicted defendant cannot be forced to pay court costs unless he is or will be able to do so. Texas Article 1018, supra, imposes, as a matter of law, a charge on a convicted defendant for court costs and fees. Article 42.12(6)(h), Vernon's Ann.C.C.P., allows a court to impose as a condition of probation the requirement that a defendant "pay . . . all court costs . . . and make restitution or reparation in any sum that the court shall determine." However, repeated decisions of this court have made it clear that probation may not be revoked for failure to pay these costs unless the State shows that the probationer was able to make such payments and that his failure to do so was intentional. See, e.g., *Herrington v. State*, 534 S.W.2d 331 (Tex. Cr.App.1976); *Denton v. State*, 511 S.W.2d 311 (Tex.Cr.App.1974); *Szczeck v. State*, 490 S.W.2d 576 (Tex.Cr.App.1973). A recent amendment to Article 42.12, § 8, Vernon's Ann.C.C.P., now makes available to a probationer an affirmative defense if he can establish that he is unable to repay compensation paid to appointed counsel[5] and thus modifies prior case law. The result in Texas was and is consistent with the second condition stated in *Fuller*.

Third, a convicted person in Oregon may petition the court for remission of costs or of any unpaid portion thereof. While Texas law does not expressly authorize remission of costs, Article 42.12, supra, does allow the probationer to petition the court to modify the conditions of probation. This provides an opportunity for a probationer who is financially unable to pay costs to call his hardship to the court's attention and to have this condition modified or eliminated.

Finally, no convicted person in Oregon may be held in contempt for failure to repay if his default was not due to an intentional refusal to obey the court's order or to a failure to make a good faith effort to pay.

As discussed above, revocation for a probationer's failure to repay compensation for appointed counsel, costs, etc., is improper if the probationer establishes that he is unable to make such payments.[6]

We feel that the reasoning in *Fuller* adequately answers appellant's arguments concerning the constitutionality of the Texas recoupment plan. Therefore, appellant's first ground of error is overruled.

■ Appellant next argues that the trial court erred in denying his motion to remove the search and seizure condition of probation because it violates the United States and Texas Constitutions. We conclude that the condition in the instant case, identical to the one in *Tamez v. State*, 534 S.W.2d 686 (Tex.Cr.App.1976), is overbroad and does violate the probationer's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Texas Constitution. A probationer, like a parolee, has the right to enjoy a significant degree of privacy. *Tamez v. State*, supra; *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Habeas corpus relief is hereby partially granted; and it is ordered that the unconstitutional search and seizure condition be deleted from the terms and conditions of appellant's probation.

It is so ordered.

ODOM, Judge, concurring.

I concur in the conclusion of the majority that appellate jurisdiction does not lie in

---

5. Article 42.12, § 8(c), now reads:

"(c) In a probation revocation hearing at which it is alleged that the probationer violated the conditions of probation by failing to pay compensation paid to appointed counsel, probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of evidence." (Acts 1977, 65th Leg., ch. 388, p. 1058 [S.B. 61], effective August 29, 1977)

6. See footnote # 5.

this case, and that habeas corpus jurisdiction does lie. I also share the concern expressed by the dissent that some may misconstrue the majority opinion as creating an "expansion of our habeas corpus jurisdiction [that] will open a 'Pandora's box' of frivolous claims." I do not, however, find the majority's conclusion "that the imposition of conditions of probation that contain unconstitutional infringements of freedom of action constitutes a 'restraint' within the scope of habeas corpus relief" creates such a broad-reaching expansion as contended by the dissent. The majority find jurisdiction on appellant's tenable claims of unconstitutional conditions of probation, and do not open the door for all attacks that may be conceived, even if frivolous or not of constitutional magnitude.

It should be noted that habeas corpus may not be used as a substitute for appeal. *Mixon v. State,* Tex.Cr.App., 365 S.W.2d 364; *Ex parte Eldridge,* 154 Tex.Cr.R. 50, 224 S.W.2d 262; *Ex parte Loper,* 153 Tex. Cr.R. 240, 219 S.W.2d 81. The proper means to challenge the validity of a condition of probation imposed at conviction is by appeal from that conviction. This Court will consider such claims at that time. *Morales v. State,* Tex.Cr.App., 541 S.W.2d 443; *Flores v. State,* Tex.Cr.App., 513 S.W.2d 66; *Faugh v. State,* Tex.Cr.App., 481 S.W.2d 412; *Milligan v. State,* Tex.Cr. App., 465 S.W.2d 157. Only in special circumstances should habeas corpus be available to challenge the validity of a condition of probation imposed at conviction.

In the case at bar petitioner was convicted and placed on probation on July 7, 1975. The search and seizure condition of his probation (set out in the majority opinion) was imposed at that time. *Tamez v. State,* Tex. Cr.App., 534 S.W.2d 686, was decided on March 17, 1976, and held a probationary condition such as the one here was unreasonable and unenforceable. Because *Tamez* was decided after appellant's probation condition was imposed, he did not have benefit of that holding when he could have raised the issue on appeal. Petitioner should not be faulted for failing to anticipate this Court's decision in *Tamez v. State, supra.*

*Ex parte Taylor,* Tex.Cr.App., 484 S.W.2d 748, 752; *Ex parte Casarez,* Tex.Cr.App., 508 S.W.2d 620, 622. For this reason I concur in the exercise of our habeas corpus jurisdiction in this case on the *Tamez* issue. Furthermore, with the case before us on this ground I concur in the decision to address the other issue raised by petitioner as well. Once jurisdiction is found, no purpose would be served by declining to decide the validity of the other challenged probation condition, particularly in light of the significance of the issue.

I therefore concur in the exercise of our habeas corpus jurisdiction to hear challenges to conditions of probation under the facts of this case.

DOUGLAS, Judge, dissenting.

This Court does not have jurisdiction to strike a condition of probation where there has been no appeal from the judgment of the original trial and where there has been no motion to revoke probation. After the time for appeal had expired, Basaldua asked the trial judge to delete a condition of probation, and he refused. From the refusal we have this purported appeal.

We do not have jurisdiction. Questions of jurisdiction are fundamentally questions of power. A court has no power to act where jurisdiction does not exist.

Habeas corpus jurisdiction is conferred on this Court by the Texas Constitution and by the Code of Criminal Procedure. Article 5, Sec. 5 of the Constitution provides in part:

"The Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and shall under regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction . . . ."

Article 11.23, V.A.C.C.P., provides:

"The writ of habeas corpus is intended to be applicable to all such cases of *confinement* and *restraint,* where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or

degree not sanctioned by law." (Emphasis added.)

The majority concludes that these provisions authorize Basaldua's collateral attack upon the search and seizure condition of probation. To the contrary, the statute expressly authorizes jurisdiction only where the applicant is in custody or under arrest. See *Ex parte Guzman*, 551 S.W.2d 387 (Tex. Cr.App.1977) (dissenting opinion).

The probationary condition in question requires that Basaldua "[s]ubmit his person, place of residence and vehicle to search and seizure at any time of the day or night, with or without a search warrant whenever requested to do so by the Probation Officer or any other law enforcement officer." The identical condition was declared constitutionally infirm in *Tamez v. State*, 534 S.W.2d 686 (Tex.Cr.App.1976).

However, the judgment in the instant case was entered on July 7, 1975, prior to the decision in *Tamez*. Heretofore the search and seizure condition has not been used against Basaldua. Although such condition is unlawful, we cannot act on his habeas claim without presuming that the probation or other officers will fail to follow the law in the future and will use the condition against the applicant.

There has been no showing of a pending threat to Basaldua's privacy. Under these circumstances, no restraint within the meaning of the statute exists, and, thus, the Court has no jurisdiction of his claim.

The majority relies on *Rice v. State*, 548 S.W.2d 725 (Tex.Cr.App.1977); *Ramirez v. State*, 486 S.W.2d 373 (Tex.Cr.App.1972); and *Taylor v. State*, 482 S.W.2d 246 (Tex. Cr.App.1972), for the proposition that both of Basaldua's claims raise proper habeas corpus issues, and that "the proceedings should be considered as a habeas corpus proceeding since to dismiss the appeal and require a new and separate habeas corpus application would require a useless thing." Those cases are not in point. In each of those the appellate jurisdiction of this Court was properly invoked.

The *Ramirez* case involved a revocation of probation. He did not have and did not waive counsel in the original trial. The *Taylor* case did not permit a collateral attack on the original conviction. In the *Rice* case the State conceded that jeopardy attached to a prior conviction. On appeal this Court set a void judgment aside. In those cases we were confronted with issues which could properly be raised by habeas corpus. The Court disposed of those issues in the interest of judicial economy.

In the instant case this Court has no appellate jurisdiction. Further, in those other cases the facts did raise a proper habeas claim and would invoke the Court's habeas corpus jurisdiction. In the present case, however, Basaldua's Fourth Amendment claim is not properly within our habeas corpus jurisdiction for the reasons previously stated.

Today's holding represents an unwarranted expansion of our habeas corpus jurisdiction and will open a "Pandora's box" of frivolous claims. Under the majority's reasoning, future probationers can collaterally attack probation orders by challenging any conditions of probation, statutory or otherwise, which present no real threat of confinement or restraint. Consider, for example, the many probationers who will now probably file for habeas corpus relief contending that conditions which prohibit them from associating with persons of "harmful character" are unconstitutionally vague.

Even assuming that we have jurisdiction of the Fourth Amendment claim, we should not issue a declaratory judgment and grant the relief sought when there is no showing of a pending threat to Basaldua's privacy. If the probationary condition is used against him in the future, and his probation is revoked, he can challenge it then on appeal.

A major constitutional revision has been proposed to alleviate the workload of this Court. The majority is aggravating the situation by passing on issues such as this. As the Presiding Judge and author of the majority opinion stated in a similar context:

"... Since the present information will therefore not likely be used, I see no

necessity for this Court, with the heaviest case load of any State appellate court in this nation, to write upon the sufficiency of an information that does not control the proper disposition of the case before this Court . . ." *Bullet v. State,* 538 S.W.2d 785, 787 (Tex.Cr.App.1976).

If the majority is going to deal in the realm of possibilities, it is possible or even probable that one might appeal a refusal of a trial judge to act upon a motion to suppress evidence because it was obtained as a result of an illegal search. There would have been more restraint in that case than in the present case. In *Bosley v. State,* 414 S.W.2d 468 (Tex.Cr.App.1967), the writer of the majority opinion wrote for the Court that a trial judge did not have to pass upon the motion to suppress evidence but could consider the question during the trial. If there had been no other evidence except that obtained by the search, Bosley would have been under more of a restraint than Basaldua is because there has been no allegation that Basaldua has been or is about to be illegally searched.

Again in the realm of possibility, suppose that one learns that a search warrant has been issued for his building, and he seeks to have it vacated, but a judge will not do so. Under the opinion by the majority, he could appeal that decision because he is under restraint and an officer may violate his right to privacy.

Any time one has been charged for an offense and arrested, he is under some sort of restraint. However, this Court does not permit an attack upon his detention by habeas corpus unless the statute under which he is charged is void. *Ex parte Brannon,* 163 Tex.Cr.R. 311, 290 S.W.2d 914 (1956); *Ex parte Merriell,* 163 Tex.Cr.R. 534, 294 S.W.2d 400 (1956). There has to be a conviction and an appeal before his allegation of illegal detention is considered. There should not be a different rule in the present case. If his probation is revoked, he can appeal.

Since *Tamez v. State,* supra, has been decided, it is the law of this State, and Basaldua does not have to submit to the search. From his application for habeas corpus he knows that he does not have to submit to a search. He may inform any peace officer that he refuses to consent and that provision of probation may not be used against him. No judge confronted with a motion to revoke because a probationer refused to consent to search would revoke probation after being cited to *Tamez,* supra. If evidence is obtained as a result of an illegal search, it can be reviewed as in any other case where this Court has jurisdiction.

This Court does not have jurisdiction to pass upon this question, and it should so hold.

ROBERTS, J., joins in this dissent.